IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORTHPOINT COMMERCIAL FINANCE LLC,<br><br>   Plaintiff,<br><br>     v.<br><br>TIME OUT COMMUNITIES, LLC, et al.,<br><br>   Defendants. | CIVIL ACTION FILE<br>NO. 1:23-CV-4147-TWT |

**OPINION AND ORDER**

This is an action to recover on a note. It is before the Court on the Plaintiff Northpoint Commercial Finance LLC's Motion for Partial Summary Judgment [Doc. 69]. For the reasons set forth below, the Plaintiff's Motion for Partial Summary Judgment [Doc. 69] is GRANTED in part and DENIED in part.

## I. Background[1]

This action arises from a finance deal between the Plaintiff Northpoint Commercial Finance LLC and Defendants Time Out Communities, LLC ("Time Out") and Toppos LLC. (Pl.'s Statement of Material Facts ¶¶ 3-4). The Defendants are in the manufactured home business, and between May 2020

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

and June 2023, the Plaintiff financed Time Out's purchase of hundreds of manufactured homes. (*Id.* ¶¶ 2-3). The Plaintiff also financed Toppos's purchase of manufactured homes for the purpose of renting them, often from Time Out. (*Id.* ¶ 4). Toppos then leased the homes to the Remaining Defendants that own and operate manufactured home communities.[2] (*Id.*). Defendant Neil Carmichael Bender, II is the common owner of all of the Defendant entities. (*Id.* ¶ 6). Bender and the Remaining Defendants guaranteed Time Out and Toppos's financing obligations to the Plaintiff. (*Id.* ¶ 7).

Specifically, the Plaintiff and Time Out entered into a "Loan and Security Agreement" on May 18, 2020, under which the Plaintiff advanced funds to Time Out for it to acquire and finance manufactured homes, known as the "Floor Plan Line." (*Id.* ¶¶ 10-11). On January 4, 2022, the Plaintiff, Time Out, and Toppos executed an addendum to the Loan and Security Agreement ("Joinder Addendum") that joined Toppos as a borrower to the original agreement, along with an addendum ("Rental Line Addendum") outlining financing for Toppos to purchase manufactured homes that would then be

---

[2] The Court's use of "Remaining Defendants" refers to all of the Defendants other than Time Out Communities, LLC, Toppos LLC, Neil Carmichael Bender, II, and, for the purposes of the ruling on the Motion for Partial Summary Judgment, the five LLC Defendants identified in the Plaintiff's Notice of Bankruptcy [Doc. 79] as currently undergoing bankruptcy proceedings.

rented to third parties, including the Remaining Defendants. (*Id.* ¶¶ 12-15). This addendum created the "Rental Line."[3] (*Id.* ¶ 15). Under the Amended Loan and Security Agreement, Time Out and Toppos are jointly and severally liable for all obligations owed to the Plaintiff under the terms of that agreement. (*Id.* ¶ 17). The specific terms for financing each line were set forth in statements of financial transaction ("SOFTs"). (*Id.* ¶ 20).

> The Floor Plan Line was financed on the following terms:
>
> (a) Northpoint would finance 100% of the invoice cost of the homes, including freight;
>
> (b) Financed units would be repaid as sold or at maturity, whichever came first, with maturity occurring 720 days after financing;
>
> (c) Interest and principal curtailment payments were due on the 15th of each month, with interest accruing at variable rates set forth in the SOFT; and
>
> (d) No curtailment payments would be owed until the twelfth month, at which time they would begin at 3% of the principal balance.

(Floor Plan Line Financing Letter, [Doc. 72-4], at 1; Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 22). The Plaintiff also financed Time Out's purchase of used manufactured homes on the Floor Plan Line on the same terms. (*See* Used Floor Plan Line Financing Letter, [Doc. 72-5], at 1; Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 23-25). The Rental Line homes

---

[3] Together, these three agreements will be referred to as the "Amended Loan and Security Agreement."

were financed to Toppos and Time Out on the following terms:

> (a) Northpoint would finance homes purchased directly from the manufacturer at 100% of the invoice cost, and would refinance homes financed by other lenders at the greater of (1) the payment amount owed or (2) 90% of the wholesale value of the home as determined by Northpoint;
>
> (b) Financing matures and became due in full 10 years after funding;
>
> (e) Interest and principal curtailment payments were due each month, with interest accruing at variable rates set forth in the SOFT and the curtailment percentage ranging from .35% to .61%.

(Rental Line Financing Letter, [Doc. 72-11], at 1; Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 33-35).

Additionally, Bender "unconditionally, absolutely, and irrevocably guarantee[d] to Northpoint, without off-set or deduction, the prompt payment and performance of all indebtedness, obligations and liabilities" of Time Out and Toppos under the Amended Loan and Security Agreement. (May 18, 2020 Guaranty Agreement, [Doc. 72-16], ¶ 1; Jan. 4, 2022 Guaranty Agreement, [Doc. 72-17], ¶ 1; Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 42-44). The Remaining Defendants likewise guaranteed Time Out and Toppos's obligations under the Amended Loan and Security Agreement in separate guaranty agreements dated May 12, 2020, January 1 and 4, 2022, March 8, 2022, and October 17, 2022. (Remaining Defendants Guaranty Agreements, [Docs. 72-18-22]; Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 46-48).

4

The Plaintiff alleges that the Defendants have defaulted on their payment obligations under the Amended Loan and Security Agreement and associated Guaranty Agreements, and the Defendants admit that they are delinquent in payment but dispute the causes and amounts of the delinquency. (Pl.'s Statement of Material Facts ¶ 51; Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 51). The Plaintiff provided notice to the Defendants of the default in November 2022 and February, May, June, and July 2023. (Default Letters, [Docs. 72-23-27]; Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 52-57). In October 2023, Toppos filed a voluntary bankruptcy petition. (Pl.'s Statement of Material Facts ¶ 60); Bankruptcy Petition, [Doc. 72-29]). On December 10, 2024, the Plaintiff filed a notice indicating that five of the Remaining Defendants had also filed for bankruptcy: Top Park Services, LLC, Prairie Knolls MHP, LLC, Time Out Properties, LLC, Grand Valley MHP, LLC, and Rolling Acres MHC, LLC. [Doc. 12 ¶ 3].

The Plaintiff filed this action in September 2024 raising six counts: breach of contract (against Time Out and Toppos) (Count One); unjust enrichment (Count Two); money had and received (Count Three); breach of contract (against Bender) (Count Four); breach of contract (against the Remaining Defendants (Count Five); writ of possession (Count Six); injunctive relief and temporary restraining order (Count Seven); and appointment of a

5

receiver (Count Eight). (Compl. ¶¶ 118-181). The Plaintiff also seeks attorney's fees and expenses. (*See id.* at 39-42). The Plaintiff moved for partial summary judgment as to Counts One, Four, and Five, and that Motion is presently before the Court. [Doc. 69].

As a preliminary matter, because of the automatic stay provision of the bankruptcy code, the present litigation is stayed against Defendants Toppos, LLC, Top Park Services, LLC, Prairie Knolls MHP, LLC, Time Out Properties, LLC, Grand Valley MHP, LLC, and Rolling Acres MHC, LLC. 11 U.S.C. § 362(a). The Court will thus construe the Plaintiff's notice of bankruptcy as a withdrawal of its Motion for Partial Summary Judgment as to these Defendants.

## II.  Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and

6

present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III. Discussion

In its Motion for Partial Summary Judgment, the Plaintiff moves for summary judgment only as to Count One (against Time Out), Count Four (against Bender), and Count Five (against the Remaining Defendants). (Pl.'s Mot. for Partial Summ. J., at 1-2). As to Count One, the Plaintiff argues that the Loan and Security Agreement is a valid and binding contract that Time Out has not raised a true defense to and that Time Out admitted to a default under the Agreement by acknowledging Toppos's pending bankruptcy. (*Id.* at 15-17). Similarly, as to Counts Four and Five, the Plaintiff asserts that the Guaranty Agreements were valid and binding, that the guarantees made were unconditional, and that Bender and the Remaining Defendants expressly waived any defenses to performance of their obligations under the Guaranty Agreements. (*Id.* at 17-18). Additionally, the Plaintiff requests an immediate final judgment as to these Counts under Fed. R. Civ. P. 54(b). (*Id.* at 19-24).

In response, Time Out, Bender, and the Remaining Defendants do not dispute the validity of the Loan and Security Agreement or the Guaranty Agreements. (*See* Defs.' Resp. in Opp. to Mot. for Partial Summ. J., at 8-10). Instead, they argue that the Plaintiff's damages are not capable of exact computation because it failed to convert some of the homes from the Floor Plan

7

Line to the Rental line, failed to apply curtailment payments to the principal balance and fund transfer costs, and failed to account for payments it has received as a result of Toppo's bankruptcy proceedings. (*Id.* at 9). The Defendants also assert that the Plaintiff is estopped from pursuing its claims because it committed the first breach of the Loan and Security Agreement and the Guaranty Agreements by failing to convert floorplan homes to rental homes after "represent[ing]" that it would do so. (*Id.* at 10-11).[4]

The Plaintiff replies that all of the agreements at issue contain merger clauses that prevent the Defendants' reliance on oral representations to alter the terms of the Loan and Security Agreement and the Guaranty Agreements. (Pl.'s Reply in Supp. of Mot. for Partial Summ. J., at 6-10). It further asserts that the Defendants' attempts to rely on the Bender declaration to support the existence of a side agreement is barred by the parol evidence rule. (*Id.* at 10-11). The Plaintiff also contends that the Defendants have not properly rebutted its damages calculations because they have submitted no evidence supporting a contrary calculation. (*Id.* at 11-13).

---

[4] The Defendants did not submit a statement of additional undisputed material facts with their response as required by Local Rule 56.1(B)(2)(b) and instead submitted only a declaration given by Defendant Bender. (*See* Defs.' Resp. in Opp. to Mot. for Partial Summ. J., Ex. 1). The Court will not consider any facts the Defendants rely on in their brief that cite to the Bender Declaration. *See* LR, N.D. Ga. 56.1(B)(1) ("The Court will not consider any fact . . . set out only in the brief and not in the [respondent's] statement of undisputed facts."); LR, N.D. Ga 56.1(B)(2)(b) (noting that the respondent's statement of additional facts must meet the requirements in 56.1(B)(1)).

8

The Court will address the breach of contract claim against Time Out before turning to the claims against Bender and the Remaining Defendants.

### A. Count One – Breach of Contract Against Time Out

In Georgia, the elements of breach of contract are "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *McAlister v. Clifton*, 313 Ga. 737, 742 (2002) (citation omitted). "A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *Moore v. Lovein Funeral Home, Inc.*, 358 Ga. App. 10, 12 (2020) (quotation marks and citation omitted).

Georgia law favors enforcement of merger clauses. "The rational basis for merger clauses is that where parties enter into a final contract all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished." *First Data POS, Inc. v. Willis*, 273 Ga. 792, 795 (2001) (quotation marks, citation, and brackets omitted). Moreover, "merger clauses exist in written contracts specifically to preclude any claim of deceit by prior representations." *Id.* (quotation marks and citation omitted).

Here, there is no genuine issue as to Time Out's breach of the Loan and Security Agreement. Notably, Time Out does not dispute that it breached the agreement by failing to timely repay the balances owed on the terms outlined in the Loan and Security Agreement but instead argues only that the damages are not capable of exact computation, in part because of alleged breaches on Time Out's part, including failing to convert homes from the Floor Plan Line to the Rental Line, refunding curtailment payments made prior to the conversion, and funding transfer costs. (*See* Defs.' Resp. in Opp. to Pl.'s Mot. for Partial Summ. J., at 8-11); (Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 51). These terms do not appear in the either the Loan and Security Agreement or the financing letters, which Time Out does not dispute. (*See* Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 22-25). To the extent Time Out relies on alleged "representations" from the Plaintiff, these representations are excluded from the Loan and Security Agreement by the express terms of its merger clause. That clause provides that "[n]o provision of this Agreement shall be varied or modified by any prior or subsequent statement, conduct or act of any of the parties, except by a writing specifically referring to this Agreement and signed by all parties hereto . . . This Agreement and each applicable Schedule contain the entire agreement of the parties hereto with respect to the subject matter hereof." (Loan and Security Agreement ¶ 9). Enforcement of these clauses is favored under Georgia law to

10

preclude defendants from making the exact argument Time Out makes here—that it was deceived into entering the agreement based on prior representations by the Plaintiff. *See First Data POS, Inc.*, 273 Ga. at 795. Moreover, the Plaintiff has in fact accounted for money it has received as a result of Toppos's bankruptcy proceedings in its reply brief by providing updated loan balances that factor in the liquidation of certain collateral that has been credited towards Time Out's balances. (Pl.'s Reply in Supp. of Mot. for Partial Summ. J., at 12-13). Additionally, Time Out has provided no contrary evidence refuting the Plaintiff's computation of the damages. *See Anderson*, 477 U.S. at 257 (noting that once the burden shifts to the nonmovant, it must present affirmative evidence to show that a genuine issue of material fact exists). Accordingly, the Court finds that the Plaintiff has met its burden of demonstrating no genuine issue of material fact as to Count One and its Motion for Partial Summary Judgment will be granted on that Count.

### B. Counts Four and Five – Breach of Contract Against Bender and the Remaining Defendants

Georgia law provides that a "contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal, the principal in either instance remaining bound therefor." O.C.G.A. § 10-7-1. "Sureties, including those formerly called guarantors, are jointly and severally liable with their principal unless the

11

contract provides otherwise." *Id.* Neither Bender nor the Remaining Defendants have raised any defenses specific to the validity or binding nature of the Guaranty Agreements, and these Defendants do not dispute that they guaranteed Time Out's obligations under the Loan and Security Agreement. (Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 46-48). And their arguments as to any outside representations or issues with computing damages fail for the reasons explained previously. The Guaranty Agreements contain an almost identical merger clause to the one in the Loan and Security Agreement: "No provision of this Guaranty shall be varied or modified by any prior or subsequent statement, conduct or act of any of the parties, except by a writing specifically referring to this Guaranty and signed by Guarantor and Northpoint . . . This Guaranty contains the entire agreement with respect to the subject matter hereof." (Bender Guaranty Agreement, [Doc. 72-16], ¶ 7; Remaining Defendants Guaranty Agreements, [Docs. 72-18, 72-20, ¶ 8]. Neither Bender nor the Remaining Defendants argue against enforcement of the merger clause in the Guaranty Agreements and the Court finds no reason not to enforce it. Therefore, the Court finds that the Plaintiff has met its burden of demonstrating no genuine issue of material fact as to Counts Four and Five and its Motion for Partial Summary Judgment will be granted on these Counts as well.

### C. Damages

The Court finds that the Plaintiff has presented adequate evidence demonstrating no genuine issue of material fact as to the amount of damages owed and the computation thereof via the exhibits attached to its Motion and the updated figures in its Reply Brief. *See Bauer v. N. Fulton Med. Ctr., Inc.*, 241 Ga. App. 568, 572 (1999) (noting that damages for breach of contract claims must be "traced solely to [the] breach, be capable of exact computation, must have arisen according to the usual course of things, and be such as the parties contemplated as a probable result of such breach"). And again, the Defendants have not challenged the Plaintiff's damages calculation beyond raising arguments that are barred by merger clauses in the parties' various agreements. Accordingly, the Court finds Defendants Time Out Communities, LLC, Bender, and the Remaining Defendants to be jointly and severally liable to the Plaintiff as to Counts One, Four, and Five in the amount of $19,754,843.20, plus unpaid and accruing interest at the per diem rate of $8,274.50 from May 15, 2024, through the date of entry of judgment, plus attorney's fees and expenses in an amount to be determined at trial. (*See* Pl.'s Reply in Supp. of Mot. for Partial Summ. J., at 13-15).

### D. Request for Rule 54(b) Judgment

The Plaintiff has requested the entry of a final judgment as to Counts One, Four, and Five pursuant to Fed. R. Civ. P. 54(b). Where a party requests

13

Rule 54(b) certification, the Court conducts a two-step analysis. First, the Court must determine whether the decision is both a "judgment" and "final." *Peden v. Stephens*, 50 F.4th 972, 977 (11th Cir. 2022). The decision must be a "judgment" in that "it is a decision upon a cognizable claim for relief" and "final in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* at 977 (quotation marks and citations omitted). Second, the Court must determine whether there is "no just reason for delay." *Id.* (citation omitted). This second inquiry requires balancing efficient judicial administration against the equities. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

A Rule 54(b) judgment is not proper here because even assuming the Court's ruling on the Plaintiff's Motion for Partial Summary Judgment is a judgment, it is not final and equitable concerns do not weigh in favor of allowing any appeals in this action to proceed piecemeal. *See Peden*, 50 F.4th at 978. Two of the three Counts at issue in the present Motion remain unresolved as to several Defendants—Toppos, LLC and the five guarantor Defendants who are currently in bankruptcy proceedings—and if those proceedings do not result in discharge, the Plaintiff may resume litigating those Counts against these Defendants. Presumably, the same arguments and defenses that the Court addressed in the present Motion would apply, but the result would be at least two separate appeals—a result which is disfavored by

14

the Eleventh Circuit. *Id.* ("The federal concept of sound judicial administration and efficiency will not normally be furthered by having piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case." (quotation marks and citation omitted)). Moreover, some of the Plaintiff's remaining claims, including for a writ of possession, injunctive relief, and appointment of a receiver, are somewhat intertwined with the Counts it sought judgment on in the present Motion, counseling against a finding that the present rulings are "an ultimate disposition of an individual claim." *Id.* at 977. Nor is there any indication of "some particular danger of hardship or injustice" to the Plaintiff if the Court were to delay entry of judgment until all of the Plaintiff's claims are resolved; indeed, the Plaintiff has not argued as much. *Id.* at 978. Accordingly, the Plaintiff's Motion for Partial Summary Judgment will be denied as to its request for entry of a Rule 54(b) judgment.

### IV. Conclusion

For the reasons set forth below, the Plaintiff's Motion for Partial Summary Judgment [Doc. 69] is GRANTED in part and DENIED in part. It is GRANTED as to Count One as to Defendant Time Out Communities, LLC, Count Four in its entirety, and Count Five as to all of the Defendants identified in that Count with the exception of: Top Park Services, LLC, Prairie Knolls MHP, LLC, Time Out Properties, LLC, Grand Valley MHP, LLC, and Rolling Acres MHC, LLC. The Motion [Doc. 69] is considered WITHDRAWN as to these

15

five LLC Defendants. Defendants Time Out Communities, LLC, Bender, and the Remaining Defendants[5] are jointly and severally liable to the Plaintiff as to Counts One, Four, and Five respectively in the amount of $19,754,843.20, plus unpaid and accruing interest at the per diem rate of $8,274.50 from May 15, 2024, through the date of entry of judgment, plus attorney's fees and expenses in an amount to be determined at trial. The Motion [Doc. 69] is DENIED with respect to the Plaintiff's request for a Rule 54(b) judgment. The Parties that are not in bankruptcy are DIRECTED to file a consolidated pretrial order with respect to the remaining claims within 30 days of the date of this Order.

    SO ORDERED, this  30th  day of December, 2024.

*Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge

---

[5] Abbot Park MHC, LLC, Alamac Village MHP LLC, Cadillac Ranch MHC LLC, Brittany Court MHP LLC, Bullock MHP LLC, Cedarbrook Estates MHP LLC, Central Park 2 MHP LLC, Central Park 3 MHP LLC, City View MHC LLC, Eaglewood MHP LLC, Littlefield Village MHP LLC, Maple Creek MHP LLC, Countryside MHC LLC, Eastview MHC LLC, Pine Run Park MHP LLC, Scottsdale MHP LLC, Taylor Park MHC LLC, Waynesville Plantation MHP LLC, West Estates MHC LLC, Wysteria Village MHC LLC, Patch Place MHC LLC, Dogwood MHC LLC, Laiken Estates MHC, LLC, Schoolview MHC, LLC, Turner Park MHC, LLC, Victoria Estate MHC, LLC, Ridgefield MHC LLC, Pleasant Hope MHC LLC, Time Out MHP, LLC, Cape Fear MHC LLC, Green Pines MHC LLC, Pine Log MHC LLC, Pinewood MHC LLC, Taylors Bridge MHC LLC, and White Sands MHC LLC.